**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| JANET S., | ) | NO. ED CV 19-1466-E |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY | ) | **AND ORDER OF REMAND** |
| ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Pursuant to sentence four of 42 U.S.C. section 405(g), IT IS HEREBY ORDERED that Plaintiff's and Defendant's motions for summary judgment are denied, and this matter is remanded for further administrative action consistent with this Opinion.

**PROCEEDINGS**

Plaintiff filed a complaint on August 7, 2019, seeking review of the Commissioner's denial of benefits. The parties consented to proceed before a United States Magistrate Judge on August 22, 2019. Plaintiff filed a motion for summary judgment on December 6, 2019.

Defendant filed a motion for summary judgment on February 5, 2020. The Court has taken the motions under submission without oral argument.  See L.R. 7-15; "Order," filed August 8, 2019.

## BACKGROUND

Plaintiff, a former loan analyst/processor, asserts disability since May 22, 2015 (when she was 63 years old), based on alleged physical impairments (Administrative Record ("A.R.") 28-34, 41-42, 45, 167, 179).  An Administrative Law Judge ("ALJ") reviewed the record and heard testimony from Plaintiff and a vocational expert (A.R. 13-20, 26-44).  Plaintiff testified, inter alia, that she cannot use her hands for more than 20 minutes before experiencing tingling, numbness and pain (A.R. 34-35, 39).[1]

The ALJ found that Plaintiff has "severe" degenerative disc disease of the cervical and lumbar spine, osteoarthritis of the knees, peripheral neuropathy and obesity (A.R. 15).  However, the ALJ found that Plaintiff retains a residual functional capacity for light work, limited to: (1) occasionally climbing ladders, ropes and scaffolding; (2) frequently climbing ramps and stairs and balancing; (3) occasionally stooping, kneeling, crouching and crawling; (4) frequently using her hands and bilateral upper extremities for

---

[1]    The vocational expert testified that: (1) a person limited to using her hands for 20 minutes at a time before resting them for up to 30 minutes, per Plaintiff's testimony, would be limited to less than occasional use of the hands; and (2) a person limited to occasional use of the hands would not be able to perform Plaintiff's past relevant work (A.R. 41-43).

handling, fingering and feeling; and (5) less than occasionally being exposed to extreme cold and hazards (A.R. 16-20 (rejecting Plaintiff's allegations of greater limitations)) (emphasis added)).  The ALJ deemed Plaintiff capable of performing her past relevant work and, on that basis, denied disability benefits through December 31, 2017 (the date last insured) (A.R. 13, 20 (adopting vocational expert testimony at A.R. 41-42)).

The Appeals Council denied review (A.R. 1-3).

**STANDARD OF REVIEW**

Under 42 U.S.C. section 405(g), this Court reviews the Administration's decision to determine if: (1) the Administration's findings are supported by substantial evidence; and (2) the Administration used correct legal standards.  See Carmickle v. Commissioner, 533 F.3d 1155, 1159 (9th Cir. 2008); Hoopai v. Astrue, 499 F.3d 1071, 1074 (9th Cir. 2007); see also Brewes v. Commissioner, 682 F.3d 1157, 1161 (9th Cir. 2012).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and quotations omitted); see also Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006).

If the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ.  But the Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence.

Rather, a court must consider the record as a whole,
weighing both evidence that supports and evidence that
detracts from the [administrative] conclusion.

Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citations and
quotations omitted).

**DISCUSSION**

After consideration of the record as a whole, the Court reverses
the Administration's decision in part and remands the matter for
further administrative proceedings.  As discussed below, the
Administration materially erred in evaluating the evidence of record.

**I.   Summary of Plaintiff's Subjective Complaints and the Medical
      Record.**

Plaintiff testified that she stopped working because she was in
too much pain (A.R. 32).  Plaintiff said she could not work because
her job duties required her to "be on the computer and type" and she
cannot use her hands for more than 20 minutes before experiencing
tingling, numbness and pain in her fingers due to carpal tunnel
syndrome/neuropathy for which surgery had been recommended (A.R. 34-
35, 39).  Plaintiff also said she could not work because of pain in
her neck and associated headaches (A.R. 35, 38).  Plaintiff said she
experiences neuropathy in her hands and her feet, which requires her
to shift positions to help with numbness, tingling and pain (A.R. 38).
///

Plaintiff testified that she can drive, make breakfast, do light cleaning (but she employs a housekeeper), do laundry, cook "nothing extensive," and attend church once a month (A.R. 30, 36-37). Plaintiff said she can lift 10 pounds, sit for 30 minutes at a time, stand for 30 minutes at a time, and walk for not more than 30 minutes at a time (A.R. 37).[2]

Treatment records reflect consistent complaints of pain, numbness and tingling in Plaintiff's hands. In early May, 2015, just before Plaintiff stopped working, Plaintiff complained of numbness in her hands and feet, as well as low back pain (A.R. 271-73). She was assessed with, inter alia, cervical radiculopathy, lumbar spondylosis, lumbar radiculopathy and cervical spine stenosis (A.R. 272). She received a prescription of Tramadol (A.R. 272). Plaintiff reportedly called her doctor on May 26, 2015, requesting an "off work order" for one or two weeks due to numbness and tingling in her legs (A.R. 269-70).

Plaintiff presented for evaluation of her back and neck pain on May 29, 2015, complaining of chronic neck and back pain with worsening symptoms after prolonged sitting at work, including pain in both legs

---

[2]    In an Exertion Questionnaire dated November 25, 2015, Plaintiff reported that: (1) she is unable to sit for more than 20 minutes at a time due to tingling, numbness, and pain in her feet; (2) she cannot write for more than a few minutes at a time due to tingling, numbness and pain; and (3) she can walk to the mailbox and sometimes uses a cane when her legs hurt (A.R. 187-89). In an undated appeal form, Plaintiff reported that she was having greater problems with her right hand, limiting her capacity to use it for any prolonged or repetitive activity (A.R. 193).

and in the upper arms, tingling and numbness in the right hand, and numbness in the left leg (A.R. 266). An EMG study from 2011 reportedly had shown active right C7 cervical radiculopathy "with signs of ongoing axon loss" (A.R. 266). On examination, she reportedly was obese with a normal gait, tenderness in the lumbar and cervical spine, lower extremity strength of 4/5 and 5/5, upper extremity strength of 4/5, decreased sensation in the right arm and forearm and in both hands, and slightly decreased sensation in the left lateral leg and foot (A.R. 267-68). She was assessed with right C7 radiculopathy and mild degenerative joint disease in the lumbar spine (A.R. 268). She was prescribed physical therapy and Tramadol (A.R. 268).

In June of 2015, Plaintiff presented for an extension of her "off work order" due to ongoing low back pain not responding to physical therapy (A.R. 261). Later in June, Plaintiff reported the same complaints as at the May 29, 2015 evaluation, with the same reported findings on examination (A.R. 258-60).

In July of 2015, Plaintiff presented to the emergency room for right side flank pain, which reportedly differed from her chronic back pain (A.R. 242). On examination, she had musculoskeletal and lumbar back pain and tenderness (A.R. 245). She was diagnosed with flank pain and prescribed Norco (A.R. 247).

Later in July of 2015, Plaintiff followed up with her regular provider, requesting a continued "off work order" because her work required her to sit for a long time, which causes her low back pain

and leg numbness (A.R. 241).  Plaintiff reportedly was taking Norco and Tramadol (A.R. 241).  On examination, she had paraspinal tenderness (A.R. 242).  She was diagnosed with lumbosacral radiculitis and was prescribed more Norco (A.R. 242).

In September of 2015, Plaintiff complained of low back pain with sciatica, neck pain, tingling in her fingers and toes with swelling, and right knee pain (A.R. 237-39).  Plaintiff requested a continued "off work order" (A.R. 238).  Plaintiff reportedly was attending physical therapy (A.R. 237-38; see also A.R. 252-54, 256-58, 262-65).  Plaintiff reportedly was taking Norco and Tramadol (A.R. 238, 240).  Plaintiff reportedly did not want to try trigger point injections because she was afraid of possible pain therefrom (A.R. 240).  On examination, Plaintiff had musculoskeletal and paraspinal tenderness (A.R. 238).  She was assessed with, inter alia, cervical radiculopathy, lumbar radiculopathy, osteoarthritis of the right knee, lumbar myofascial pain syndrome, and peripheral neuropathy/paresthesia (A.R. 238, 240).

In November of 2015, Plaintiff reported neck pain radiating to her upper extremities, low back pain, bilateral knee pain and tenderness (A.R. 343).  On examination, she had musculoskeletal tenderness and tenderness in the paracervical muscles, mid and low back, and knees (A.R. 343).  She was not then using an assistive device but was advised to do so because of her observed difficulty in changing from a sitting position to a standing position (A.R. 343).  Plaintiff's Tramadol was continued (A.R. 344).

///

On January 21, 2016, Plaintiff's workers' compensation claim was denied for lack of medical evidence to support an industrially-related injury (A.R. 364-65). Agreed Medical Examiner and orthopedic surgeon Dr. Peter M. Newton subsequently reviewed the medical record, evaluated Plaintiff and prepared a report dated June 6, 2016 (A.R. 464-91). Plaintiff reportedly had been given temporary total disability for six months and then was laid off from work (A.R. 465). Plaintiff reportedly complained of headaches and pain in her neck radiating to the left arm, as well as pain in the low back, knees, hands and feet with numbness and tingling, which she attributed to sitting for prolonged periods (A.R. 465-67). Plaintiff reported numbness from repeated and prolonged typing and also reported that her feet would go numb after 20 minutes of sitting (A.R. 466). Plaintiff then was scheduled to have surgery on her left knee for a torn meniscus (A.R. 466). Plaintiff reportedly then was then taking Norco and Tramadol for her pain (A.R. 470).

On examination, Plaintiff had reduced range of motion in the cervical, thoracic and lumbar spine with pain, tenderness in her paraspinal and trapezius muscles, neck pain with movement of the shoulders, pain in the left knee when walking on toes and heels and in range of motion testing, and positive Apley's test on the left side (A.R. 472-82). X-rays showed mild degenerative joint disease of the left knee, and mild diffuse degenerative disc disease of the cervical spine and lumbosacral spine (A.R. 487). Dr. Newton diagnosed: (1) chronic pain (rule out herniated disc) causing intermittent upper extremity radiculopathy; (2) left wrist pain (rule out soft tissue strain versus peripheral neuropathy); (3) chronic low back pain (rule

out herniated disc) causing lower extremity radiculopathy; and (4) left knee pain with moderate degenerative joint disease (A.R. 487). Dr. Newton referred Plaintiff for MRI studies and electrodiagnostic testing (A.R. 488). For "work status," Dr. Newton opined that Plaintiff should be limited to lifting 5 pounds, no repetitive or prolonged overhead work, no repetitive bending, stooping, twisting, squatting or standing, and no repetitive forceful gripping or grasping (A.R. 489-90). Dr. Newton stated that Plaintiff would require 10 minutes of rest for every 50 minutes of typing or writing (A.R. 490).

Subsequent MRI studies showed straightening of the cervical lordosis, multilevel disc bulges from C4-C5 through C6-C7 with bilateral neuroforaminal narrowing, multiple ovoid lesions at L2, L3 and S1 which were recommended for further evaluation, and disc bulges at L1-L2, L2-L3 and L4-L5 with neuroforaminal narrowing (A.R. 493-96). EMG/nerve conduction studies showed bilateral polongation of the median motor nerve distal latencies and moderate slowing of the left median sensory velocity across the wrist, absent right median sensory nerve action potential, no abnormalities on EMG testing, and normal electrodiagnostic studies of the lower limbs (A.R. 498-500). Wrist ultrasounds showed "bilateral median nerve moderate fusiform enlargement and thickening (right greater than left)" (A.R. 502).

Dr. Newton reevaluated Plaintiff and prepared a second report dated September 26, 2016 (A.R. 369-95). Plaintiff had undergone left knee arthroscopy as scheduled in June (A.R. 370; see also A.R. 412-18). Plaintiff reportedly was taking Tramadol (A.R. 370).

Examination results were similar to those from Dr. Newton's first examination.  Compare A.R. 472-82 with A.R. 371-80.  Dr. Newton diagnosed: (1) chronic neck pain with 1-3 mm disc protrusion; (2) right and left median nerve neuropathy; (3) chronic low back strain with 2-3 mm disc protrusion; and (4) status post left knee arthroscopy with underlying moderate degenerative joint disease (A.R. 381).  Dr. Newton opined that Plaintiff's condition was permanent and stationary (A.R. 382).  Dr. Newton also opined that Plaintiff would be a candidate for cortisone injections for her wrists and that, if she continued to have significant symptoms, she would be a candidate for bilateral carpal tunnel release surgery (A.R. 386).  Dr. Newton assessed the same "work status" as before, and opined that Plaintiff could work with restrictions to performing the following activities for only two to four hours each in an eight hour work day:  forward bending, twisting, keyboarding and bilateral hand grasping (A.R. 386).  Dr. Newton also opined that Plaintiff could not lift or carry more than five pounds for more than four hours per day (A.R. 386).  On March 1, 2017, Plaintiff was awarded permanent disability workers' compensation benefits (A.R. 397-406).

Plaintiff received treatment from Dr. Rubina Shaheen during January, 2017 - March, 2018 (A.R. 515-41).  In April of 2017, Plaintiff complained of left arm and shoulder pain radiating down to her fingers and was assessed with left shoulder impingement and neuralgia (A.R. 534-35).  Dr. Shaheen prescribed Soma (A.R. 535).  In June of 2017, Plaintiff complained of chronic lower right sided pain radiating to the right leg for which she was taking Tramadol (A.R. 528).  Plaintiff was diagnosed with sciatica and given a Lidoderm

patch (A.R. 529).

Dr. Shaheen completed a "Medical Assessment of Ability to do Work-Related Activities," dated April 5, 2018 (A.R. 460).  Dr. Shaheen opined that Plaintiff could: (1) lift and carry 10 pounds; (2) occasionally use her upper extremities; (3) sit, stand and walk for 30 minutes at one time; and (4) sit for 30 minutes total and stand or walk for 30 minutes total in an eight hour workday (A.R. 460).  Dr. Shaheen reported that Plaintiff has "cervical neck stenosis with compression and neuropathy with pain," as supported by a cervical MRI and "neurological assessment in documentation" (A.R. 460).

Non-examining state agency physicians reviewed the record in December of 2015 and May of 2016 (before Dr. Newton's comprehensive evaluations) and found Plaintiff capable of light work with no manipulative limitations (A.R. 45-63).  The state agency physicians did not review any other doctors' opinions.  See id.

**II.  The ALJ Erred in Discounting Plaintiff's Testimony and Statements Regarding the Severity of Plaintiff's Symptoms Without Stating Legally Sufficient Reasons for Doing So.**

Where, as here, an ALJ finds that a claimant's medically determinable impairments reasonably could be expected to cause some degree of the alleged symptoms of which the claimant subjectively complains, any discounting of the claimant's complaints must be supported by "specific, cogent" findings.  See Berry v. Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010); Lester v. Chater, 81 F.3d 821, 834

(9th Cir. 1995); but see Smolen v. Chater, 80 F.3d 1273, 1282-84 (9th Cir. 1996) (indicating that ALJ must state "specific, clear and convincing" reasons to reject a claimant's testimony where there is no evidence of malingering).[3]  Generalized, conclusory findings do not suffice.  See Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004) (the ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony") (internal citations and quotations omitted); Holohan v. Massanari, 246 F.3d 1195, 1208 (9th Cir. 2001) (the ALJ must "specifically identify the testimony [the ALJ] finds not to be credible and must explain what evidence undermines the testimony"); Smolen v. Chater, 80 F.3d at 1284 ("The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion."); see also Social Security Ruling ("SSR") 96-7p (explaining how to assess a claimant's credibility), superseded,

///

///

///

---

        [3]     In the absence of an ALJ's reliance on evidence of "malingering," most recent Ninth Circuit cases have applied the "clear and convincing" standard.  See, e.g., Leon v. Berryhill, 880 F.3d 1041, 1046 (9th Cir. 2017); Brown-Hunter v. Colvin, 806 F.3d 487, 488-89 (9th Cir. 2015); Burrell v. Colvin, 775 F.3d 1133, 1136-37 (9th Cir. 2014); Treichler v. Commissioner, 775 F.3d 1090, 1102 (9th Cir. 2014); Ghanim v. Colvin, 763 F.3d 1154, 1163 n.9 (9th Cir. 2014); Garrison v. Colvin, 759 F.3d 995, 1014-15 & n.18 (9th Cir. 2014); see also Ballard v. Apfel, 2000 WL 1899797, at *2 n.1 (C.D. Cal. Dec. 19, 2000) (collecting earlier cases).  In the present case, the ALJ's findings are insufficient under either standard, so the distinction between the two standards (if any) is academic.

SSR 16-3p (eff. March 28, 2016).[4]

In the present case, the ALJ acknowledged that "there is evidence of some significant degenerative pathology in the cervical and lumbar spines which might be expected to result in some chronic pain and stiffness (though not necessarily in radiculopathy, based on the MRIs and EMG studies)" (A.R. 18).  The ALJ also acknowledged that nerve conduction studies "suggested some medial nerve issues" and wrist ultrasounds "suggested 'thickening' of the median nerves bilaterally, which might account for . . . reports of recurrent hand sensation problems" (A.R. 18).  However, the ALJ discounted Plaintiff's testimony and statements regarding the severity of her limitations (A.R. 18-19).  The ALJ stated three reasons for doing so: (1) Plaintiff's allegations were "not entirely support[ed]" by the evidence of record because she did not "consistently exhibit" sensation loss in her extremities on examination or "clear evidence of serious dexterity or grip loss on exam" (A.R. 18); (2) with the exception of knee surgery, Plaintiff "required relatively minimal treatment for her symptoms" (A.R. 18); and (3) Plaintiff was able to perform "a fairly good range of normal daily tasks (many household chores were taken care of by a housekeeper), including caring for her

---

[4]    Social Security Rulings ("SSRs") are binding on the Administration.  See Terry v. Sullivan, 903 F.2d 1273, 1275 n.1 (9th Cir. 1990).  The appropriate analysis under the superseding SSR is substantially the same as the analysis under the superseded SSR.  See R.P. v. Colvin, 2016 WL 7042259, at *9 n.7 (E.D. Cal. Dec. 5, 2016) (stating that SSR 16-3p "implemented a change in diction rather than substance") (citations omitted); see also Trevizo v. Berryhill, 871 F.3d 664, 678 n.5 (9th Cir. 2017) (suggesting that SSR 16-3p "makes clear what our precedent already required").

pet, engaging in self-care, leaving her home when necessary, engaging in non-strenuous leisure activity, etc." (A.R. 18-19).

With regard to reason (2), a limited course of treatment sometimes can justify the rejection of a claimant's testimony, at least where the testimony concerns physical problems. See, e.g., Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) (lack of consistent treatment, such as where there was a three to four month gap in treatment, properly considered in discrediting claimant's back pain testimony); Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (in assessing the credibility of a claimant's pain testimony, the Administration properly may consider the claimant's failure to request treatment and failure to follow treatment advice) (citing Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991) (en banc)); Matthews v. Shalala, 10 F.3d 678, 679-80 (9th Cir. 1993) (permissible credibility factors in assessing pain testimony include limited treatment and minimal use of medications); see also Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) (absence of treatment for back pain during half of the alleged disability period, and evidence of only "conservative treatment" when the claimant finally sought treatment, sufficient to discount claimant's testimony).

In the present case, however, it is doubtful Plaintiff's treatment with narcotic pain medications (Norco and Tramadol) may properly be characterized as "minimal" or "conservative" within the meaning of Ninth Circuit jurisprudence. See, e.g., Shepard v. Colvin, 2015 WL 9490094, at *7 (E.D. Cal. Dec. 30, 2015) ("[p]rior cases in the Ninth Circuit have found that treatment was conservative when the

claimant's pain was adequately treated with over-the-counter
medication and other minimal treatment," however where record
reflected heavy reliance on Tramadol and Oxycodone and other
prescriptions for pain, record did not support finding that treatment
was "conservative") (internal citations omitted; citing for comparison
Lapeirre-Gutt v. Astrue, 382 Fed. App'x. 662, 664 (9th Cir. 2010)
(doubting whether "copious amounts of narcotic pain medication" as
well as nerve blocks and trigger point injections was "conservative"
treatment)); Childress v. Colvin, 2014 WL 4629593, at *12 (N.D. Cal.
Sept. 16, 2014) ("[i]t is not obvious whether the consistent use of
[Norco] (for several years) is 'conservative' or in conflict with
Plaintiff's pain testimony"); Aguilar v. Colvin, 2014 WL 3557308, at
*8 (C.D. Cal. July 18, 2014) ("It would be difficult to fault
Plaintiff for overly conservative treatment when he has been
prescribed strong narcotic pain medications"); Christie v. Astrue,
2011 WL 4368189, at *4 (C.D. Cal. Sept. 16, 2011) (refusing to
characterize as "conservative" treatment that included narcotic pain
medication and epidural injections); Eicholtz v. Astrue, 2008 WL
4642976, at *3 (C.D. Cal. Oct. 20, 2008) (court acknowledged the
precept that "[a]n ALJ may discount a claimant's testimony based on
conservative treatment," but appeared to deem this precept
inapplicable because the claimant took Tramadol). As detailed above,
Plaintiff regularly sought treatment throughout the alleged disability
period, underwent physical therapy and knee surgery and consistently
///
///
///
///

was prescribed narcotic pain medication.[5]  Contrary to the ALJ's assertion, Plaintiff's treatment has not been "minimal" within the meaning of Ninth Circuit jurisprudence.

With regard to reason (3), inconsistencies between admitted daily activities and claimed incapacity properly may impugn the accuracy of a claimant's testimony and statements under certain circumstances. See, e.g., Thune v. Astrue, 499 Fed. App'x 701, 703 (9th Cir. 2012) (ALJ properly discredited pain allegations as contradicting claimant's testimony that she gardened, cleaned, cooked, and ran errands); Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1175 (9th Cir. 2008) (claimant's "normal activities of daily living, including cooking, house cleaning, doing laundry, and helping her husband in managing finances" provided sufficient explanation for discounting claimant's testimony).  Yet, it is difficult to reconcile Ninth Circuit opinions discussing when a claimant's admitted activities may and may not justify a discounting of the claimant's testimony and statements. Compare Stubbs-Danielson v. Astrue with Vertigan v. Halter, 260 F.3d 1044, 1049-50 (9th Cir. 2001) ("the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract

---

[5]     Defendant appears to suggest as a reason to discount Plaintiff's subjective complaints the alleged fact that Plaintiff testified surgery had been recommended for her wrist/hand pain even though the record assertedly fails to reflect such a recommendation.  The Court may not rely on this reasoning because the ALJ did not specify this reasoning in discounting Plaintiff's subjective complaints.  See Pinto v. Massanari, 249 F.3d 840, 847 (9th Cir. 2001) (the court "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision").

from her credibility as to her overall disability"); see also Diedrich v. Berryhill, 874 F.3d 634, 642-43 (9th Cir. 2017) (daily activities of cooking, cleaning, vacuuming, washing dishes, shopping and cleaning a cat's litter box insufficient to discount the claimant's subjective complaints).

In the present case, Defendant concedes that Plaintiff's limited daily activities "do not necessarily contradict her subjective complaints" (Defendant's Motion, p. 9). The Court agrees. Plaintiff's daily activities cannot properly undermine her subjective complaints. See Revels v. Berryhill, 874 F.3d 648, 667-68 (9th Cir. 2017).

With regard to reason (1), inconsistencies between a claimant's subjective complaints and the objective medical evidence can be a factor in discounting a claimant's subjective complaints, but cannot "form the sole basis." See Burch v. Barnhart, 400 F.3d at 681; Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001). As discussed above, the ALJ's other two stated reasons for discounting Plaintiff's subjective complaints are legally infirm. Therefore, the ALJ's reliance on any alleged inconsistency between Plaintiff's subjective complaints and the objective medical evidence cannot properly support the ALJ's decision.

Even if the ALJ could rely solely on an alleged inconsistency between Plaintiff's subjective complaints and the objective medical evidence, the ALJ's reasoning would still be insufficient. The ALJ observed that, although Plaintiff complained of extremity numbness,

tingling and pain, she had largely normal findings of strength and
sensation on examination (A.R. 17-19).  The ALJ acknowledged, however,
that the results of Plaintiff's nerve conduction study and wrist
ultrasound "might account for" Plaintiff's reported hand problems
(A.R. 18).  Further, the medical record includes findings of lumbar
and cervical radiculopathy, as well as peripheral neuropathy (which
the ALJ found to be a severe impairment) (A.R. 15, 238, 240, 242, 268,
382, 487).  The cited normal strength and sensory findings on
examination are not necessarily inconsistent with Plaintiff's
testimony regarding the problems with her hands she experiences after
20 minutes of repetitive use.  Thus, Plaintiff's relevant subjective
complaints are not necessarily inconsistent with the objective medical
evidence.

The Court is unable to conclude that the ALJ's failure to state
legally sufficient reasons for discounting Plaintiff's subjective
complaints was harmless.  "[A]n ALJ's error is harmless where it is
inconsequential to the ultimate non-disability determination."  Molina
v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012) (citations and
quotations omitted).  Here, the vocational expert testified that, if
someone were limited to occasional use of her hands, she could not
perform Plaintiff's past relevant work (A.R. 43).  The vocational
expert did not testify whether there are jobs performable by a person
as limited as Plaintiff claims to be (A.R. 41-43).
///
///
///
///

1  **III. Remand for Further Administrative Proceedings is Appropriate.**

3       Remand is appropriate because the circumstances of this case
4  suggest that further development of the record and further
5  administrative review could remedy the ALJ's errors.  See McLeod v.
6  Astrue, 640 F.3d 881, 888 (9th Cir. 2011); see also INS v. Ventura,
7  537 U.S. 12, 16 (2002) (upon reversal of an administrative
8  determination, the proper course is remand for additional agency
9  investigation or explanation, except in rare circumstances); Leon v.
10 Berryhill, 880 F.3d 1041, 1044 (9th Cir. 2017) (reversal with a
11 directive for the immediate calculation of benefits is a "rare and
12 prophylactic exception to the well-established ordinary remand rule");
13 Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the
14 district court concludes that further administrative proceedings would
15 serve no useful purpose, it may not remand with a direction to provide
16 benefits"); Treichler v. Commissioner, 775 F.3d 1090, 1101 n.5 (9th
17 Cir. 2014) (remand for further administrative proceedings is the
18 proper remedy "in all but the rarest cases"); Harman v. Apfel, 211
19 F.3d 1172, 1180-81 (9th Cir.), cert. denied, 531 U.S. 1038 (2000)
20 (remand for further proceedings rather than for the immediate payment
21 of benefits is appropriate where there are "sufficient unanswered
22 questions in the record"); Connett v. Barnhart, 340 F.3d 871, 876 (9th
23 Cir. 2003) ("Connett") (remand is an option where the ALJ fails to
24 state sufficient reasons for rejecting a claimant's excess symptom
25 testimony); but see Orn v. Astrue, 495 F.3d 625, 640 (9th Cir. 2007)
26 (citing Connett for the proposition that "[w]hen an ALJ's reasons for
27 rejecting the claimant's testimony are legally insufficient and it is
28 clear from the record that the ALJ would be required to determine the

claimant disabled if he had credited the claimant's testimony, we remand for a calculation of benefits") (quotations omitted); <u>see also</u> <u>Brown-Hunter v. Colvin</u>, 806 F.3d 487, 495-96 (9th Cir. 2015) (discussing the narrow circumstances in which a court will order a benefits calculation rather than further proceedings); <u>Ghanim v. Colvin</u>, 763 F.3d 1154, 1166 (9th Cir. 2014) (remanding for further proceedings where the ALJ failed to state sufficient reasons for deeming a claimant's testimony not credible); <u>Vasquez v. Astrue</u>, 572 F.3d 586, 600-01 (9th Cir. 2009) (a court need not "credit as true" improperly rejected claimant testimony where there are outstanding issues that must be resolved before a proper disability determination can be made).  There remain significant unanswered questions in the present record.

///
///
///
///
///
///
///
///
///
///
///
///
///
///
///

**CONCLUSION**

For all of the foregoing reasons,[6] Plaintiff's and Defendant's motions for summary judgment are denied and this matter is remanded for further administrative action consistent with this Opinion.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: March 9, 2020.

_____
/s/
CHARLES F. EICK
UNITED STATES MAGISTRATE JUDGE

---

[6]    The Court has not reached any other issue raised by Plaintiff except insofar as to determine that reversal with a directive for the immediate payment of benefits would not be appropriate at this time.